# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| WALLACE DAVIS, JR., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-10-CA-557-XR |
| | § | |
| FELIPE RAMOS, SAN ANTONIO POLICE DEPARTMENT, and CITY OF SAN ANTONIO, | § § § § | |
| | § | |
| *Defendants*. | | |

## ORDER

On this date, the Court considered the United States Magistrate Judge's Memorandum and Recommendation (Docket No. 45) on the separate Motions for Summary Judgment of Defendants Felipe Ramos (Docket No. 39) and the City of San Antonio (Docket No. 35). After careful consideration of the Magistrate Judge's memorandum and the parties' respective motions and filings, this Court ACCEPTS IN PART the Magistrate Judge's recommendation, GRANTS the City's motion for summary judgment, and DENIES Ramos's motion for summary judgment.

## Background

On June 30, 2010, Plaintiff Wallace Davis, Jr., filed a civil suit against Ramos, the San Antonio Police Department (SAPD), and the City of San Antonio (City) under 28 U.S.C. § 1983 (Docket No. 2).[1] In his complaint, Davis alleged that Ramos violated his Fourth Amendment rights

---

[1] As a department of the City, SAPD is identical to the City for purposes of § 1983 liability. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 662 n. 4 (1978).

1

by using excessive force, and that the City had "fail[ed] to protect [Davis]...by not looking into [his] claim of abuse by Officer Ramos."[2]

Davis's suit arose from a contested incident that occurred on January 25, 2010, in San Antonio, Texas. According to Davis's version of events,[3] he was walking along the sidewalk of Amanda Street around 9:30 p.m. when a SAPD patrol car driven by two uniformed officers, Ramos and Rosendo Hoyos III (Hoyos), pulled up in front of him.[4] Both officers exited the vehicle and "aggressively" approached him, with Ramos allegedly demanding Davis's identification card in a "harassing" manner. According to Davis, he "never said [he] wasn't willing" to provide the card. Yet as Davis reached into his back pocket to check, Ramos grabbed his right arm as if "assuming that [Davis] was reaching for a weapon" and quickly locked Davis into a tight bear hug. Sensing that he "was going down hard" and "in fear for [his] life," Davis grabbed the patrol car's fender well to secure himself. Despite this attempt, Ramos allegedly proceeded to grab Davis in a headlock before lifting and slamming ("piledriving") him headfirst into the street's asphalt, knocking him unconscious. Davis awoke to find EMS at the scene (called by the officers), and treating him for contusions on the left side of his face, a blackened left eye, and a bloody gash on his forehead that later required five staples to close. After treatment at Baptist Medical Center, Davis was discharged into Ramos's and Hoyos's custody. On the ride to the jail, Ramos allegedly asked his superior on

---

[2]Pl.'s Orig. Compl. ¶ 3(B).

[3]The facts contained in this summary are those alleged in Davis's Original Complaint and his Affidavit filed in response to Defendants' summary judgment motions. Pl.'s Orig. Compl. ¶ 4 (including handwritten continuation); Pl.'s Aff. at 1-3.

[4]Davis also asserts that Amanda Street only has sidewalks on some portions of the road. Pl.'s Aff. at 2.

2

the car's radio if he might release Davis; however, the superior refused and on arrival at the jail Davis was charged with resisting arrest. Davis alleges that as a result of the incident, he now suffers from paralysis to the left side of his face, concentration and left eye vision difficulties, and recurrent headaches.

The officers present a markedly different account of the incident.[5] They allege that at the same time and location, both officers noticed Davis walking south on Amanda Street's roadway (despite the presence of sidewalks on both sides), unsteady on his feet, and holding a can of Busch beer. As they pulled up next to Davis to allegedly "check on his welfare," he waved at them and flashed them a peace sign. After the officers exited the vehicle, Ramos informed Davis of the reason for stopping him; Davis then became belligerent and loud, repeatedly yelling that he "didn't do anything" and reaching for his back pocket. Ramos calmly requested Davis's identification after allegedly noticing that Davis displayed bloodshot eyes, slurred speech, and a strong smell of intoxication, but Davis admitted to not having it. According to Ramos and Hoyos, Davis then reached into his back pocket again and the officers thought that he might have a weapon. Ramos grabbed Davis's arm and demanded that he extract his hand. Davis refused and attempted to pull away, but Ramos moved behind Davis and wrapped him in a bear hug while informing Davis that he was under arrest. Hoyos sought Davis's left hand to handcuff it, but Davis wrapped his arms around Ramos's arms and interlocked his fingers to prevent being handcuffed while he pushed off from the patrol car with his legs. By the time Hoyos seized Davis's left hand, Davis had struggled out of Ramos's embrace, forcing Ramos to put Davis into a headlock as Davis wrapped his right arm

---

[5] This account's facts are those provided in Ramos's Original Answer and the City's summary judgment evidence. Def. Ramos's Orig. Ans. ¶ 7; Offense and Supplemental Officer Reports at 5-15, January 25, 2010 (Def. City's Mot. For Sum. Judg., Ex. 35-1).

around Ramos's left leg. Eventually Davis's hold and the weight of the interlocked men overcame Ramos's balance, and the three crashed together to the ground. After handcuffing Davis, Hoyos and Ramos noticed Davis's head was bruised and bleeding, and they immediately contacted EMS. Davis was then treated at the scene and Baptist Medical Center, during which time he was verbally abusive; on the way to jail Davis also allegedly alternated between threatening to sue the officers and begging to be released.[6]

The case was referred to a U.S. Magistrate Judge to oversee pretrial matters and to issue recommendations. 28 U.S.C. § 636. The City filed an Original Answer (Docket No. 7) on August 17, 2010, which generally denied Davis's allegations, and asserted defenses of qualified immunity for Ramos and the City on grounds that Davis failed to state a claim warranting relief and that Davis's stop and arrest involved a reasonable use of force.[7] FED. R. CIV. P. 12(b)(6). Ramos's Original Answer (Docket No. 13), filed on August 27, 2010, generally denied Davis's allegations and asserted affirmative defenses of qualified immunity.[8] Initial disclosures (Docket Nos. 19, 21, 24) and expert witness opinions (Docket Nos. 32, 33) followed. On March 23, 2011, the City filed for summary judgment; Ramos also filed for summary judgment on March 25, 2011. The Magistrate Judge ordered Davis (Dockets No. 37, 41) to respond to both summary judgment motions by April 15, 2011, which upon Davis's request for an extension was firmly set for June 15, 2011 (Docket No. 43). However, on June 14, 2011, the Magistrate Judge issued a Memorandum and Recommendation,

---

[6] The officers also found and collected a burnt marijuana cigar near where Davis was spotted, but admit to not knowing if Davis had discarded it. The beer can was not recovered.

[7] Def. City's Orig. Ans. ¶ 4-23.

[8] Def. Ramos's Orig. Ans. ¶ 4-13.

4

recommending that this Court grant both Defendants' motions for summary judgment.⁹

Davis's sworn response affidavit was received by this Court on June 17, 2011. In it, Davis averred the same facts as his complaint. Notably, Davis reiterated that Ramos demanded his identification in a "harassing" manner and that as Davis reached into his pocket for it, Ramos grabbed him "without provocation."¹⁰ According to Davis, this was unwarranted because "[he] was complying" and "never said [he] wasn't willing."¹¹ Davis asserted that he was seized in a headlock "before [he] was given time" to react, and that he then grabbed the patrol car's fender well "fearing for [his] life."¹² In addition to a cut requiring six staples, Davis alleged suffering left facial nerve and vision damage and cites "a [d]octor's diagnosis stating I was assaulted the day I was brought in," hospital bills, and pictures of his injuries.¹³

## Standard of Review

### A. Review of Magistrate Judge Recommendation

Davis filed no objections to the Magistrate Judge's Recommendation. Absent a party's timely objections, the Fifth Circuit denies a party's entitlement to *de novo* review of a magistrate judge's findings and recommendations by a district court. *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988). A lack of objections to a magistrate judge's recommendation does not remove

---

⁹Davis's Affidavit (Docket No. 49) was dated June 13, 2011, and sent in an envelope postmarked June 14, 2011. Thus it was submitted before the deadline and is properly within the record for consideration.

¹⁰Pl.'s Aff. at 2.

¹¹*Id.*

¹²*Id.*

¹³*Id.*

5

a district court's duty to independently review the case. *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 646 (5th Cir. 1994). This Court may accept, reject, or modify the magistrate judge's findings in whole or in part, request further evidence, or recommit the matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1)(C). Further, this Court may reconsider any pretrial matter where shown that the magistrate judge's order is clearly erroneous or contrary to law. *Id.* §636(b)(1)(A). In light of the entire record and Davis's summary judgment response which was timely filed but not considered by the Magistrate Judge, this Court independently reviews the Recommendation's "findings, conclusions, and recommendations" and the "pleadings, files, and records" of this case *de novo*. *See U.S. v. Fisher*, 364 Fed.Appx. 101, 102 (5th Cir. 2010).

**B. Summary Judgment**

Summary judgment is appropriate if the summary judgment evidence demonstrates the non-existence of a genuine issue as to any material fact and the moving party's entitlement to judgment as a matter of law. *Mello v. Sara Lee Corp.*, 431 F.3d 440, 443 (5th Cir. 2005); FED. R. CIV. P. 56. Once a movant meets this initial burden, the nonmovant may not rest upon mere allegations or denials in the pleadings, but must present affirmative evidence setting forth specific facts which show the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This Court construes all evidence in the light most favorable to the nonmovant, while also drawing all reasonable inferences in his favor. *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2009).

## Analysis

**A. Officer Ramos**

In his complaint, Davis alleges that Officer Ramos harassed him and demanded his

identification, then grabbed his arm upon compliance, forced him into a bear hug, and slammed him headfirst into the pavement. Davis's affidavit also asserts that he was stopped while on the sidewalk, that he was seized while complying with the officer's instructions, that he made no refusal, and that he was diagnosed as being assaulted after the incident. In his summary judgment motion, Ramos claims qualified immunity because 1) Davis cannot establish a constitutional violation occurred because his injuries were *de minimis*, and 2) Ramos's actions were objectively reasonable under the circumstances. The Magistrate Judge found Ramos's second argument persuasive and recommended granting summary judgment. This Court disagrees.

Qualified immunity protects government officials performing discretionary functions from liability unless their conduct violates clearly established constitutional or statutory rights of which a reasonable person would have known. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). Once a qualified immunity claim is presented, this Court must evaluate 1) whether the plaintiff has alleged a violation of a clearly established right and 2) whether the defendants' conduct was objectively reasonable in light of clearly established law at the time of the alleged violation. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).

*De Minimis Inquiries*

Ramos first argues that Davis failed to establish a sufficient injury because his bruising and cuts are *de minimis*.[14] Ramos cites as support *Williams v. U.S.*, where a plaintiff's alleged severe bruising and scrapes as well as pain from kicking and pepper spray were nevertheless held *de minimis* and unable to support an excessive force claim. *Williams v. U.S.*, 2009 WL 3459873, at *12

---

[14]Def. Ramos's Mot. For Sum. Judg. at 7.

7

(S.D.Tex. Oct. 20, 2009).[15] Ramos thus concludes that Davis's injuries are also *de minimis* because Davis's post-incident medical records indicate only abrasions, "scalp contusion, facial laceration, and eye conjunctival hemorrhage"[16] and later headaches.[17] Ramos also argues that medical expert Dr. Rod Lee concluded that 1) no significant medical injury existed, 2) Davis's headaches could have been caused by any of several assaults, and 3) Davis's checkup on February 4, 2010, indicated normal vision.[18] The Magistrate Judge recommended rejecting this basis for summary judgment. This Court agrees.

A claim of excessive force under the Fourth Amendment has three elements: 1) injury 2) which resulted directly and only from a use of force that was clearly excessive, and 3) the excessiveness was clearly unreasonable. *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007). An excessive force claim requires that a plaintiff's asserted injuries be more than *de minimis*. *See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Determinations of an injury's sufficiency are contextual and directly related to the amount of force constitutionally permissible under the circumstances. *Ikerd v. Blair*, 101 F.3d 430, 435 (5th Cir. 1996). Because excessive force claims are separate and distinct from unlawful arrest claims, the former must be analyzed without regard to whether the arrest itself was justified. *Freeman*, 483 F.3d at 417.

---

[15]*Id.* at 8.

[16]The conjunctiva is "the delicate, moist, transparent membrane which covers the front surface of the eyeball." 2 J.E. Schmidt, Attorney's Dictionary of Medicine C-420 (2010). A hemorrhage is bleeding, "especially profuse bleeding, as from a ruptured or cut blood vessel." *Id.* at H-85.

[17]*Id.* at 9.

[18]*Id.* at 10-11; Affidavit of Dr. Rod Lee, M.D. at 2, January 5, 2011 (Def. Ramos's Desig. Of Exp. Witn., Ex. C).

Here, the Magistrate Judge held that Ramos's evidence created a genuine issue of fact whether Davis's injury was *de minimis*, based on 1) Davis's EMS record of moderate hematoma and abrasions;[19] 2) Davis's on-scene complaints of head pain; 3) hospital records of Davis's forehead contusion which required five staples to close; 4) Davis's CT scan indicating "large scalp hematoma"; and 5) Dr. Lee's acknowledgment of Davis's post-incident headache complaints.[20] This Court adopts these findings. Unlike *Freeman* or *Williams*, Davis asserts injuries involving permanent, internal damages to his head and sight which the evidence supports. Moreover, Davis's EMS treatment records list injuries including facial laceration and bleeding, not merely bruises.[21] Viewing this medical evidence in light of Ramos's equivocal expert testimony, a genuine issue of fact exists as to whether Davis's injuries are *de minimis*.

***Totality of the Circumstances***

Ramos next argues that the officer reports and the expert testimony of former SAPD Chief Albert Ortiz establish that 1) Davis's injury was caused by his own act of placing his hand in his pocket, and 2) that Ramos's assumption that Davis might have a weapon and his consequent actions were therefore objectively reasonable in the circumstances. In short, Ramos concludes that his evidence affirmatively disproves the second and third elements of Davis's excessive force claim. The Magistrate Judge found this argument persuasive and recommended granting Ramos summary

---

[19]A hematoma involves "a mass or localized collection of blood confined within a space of the body" or a "tumor" of clotted blood, which results from a ruptured blood vessel. 3 J.E. Schmidt, Attorney's Dictionary of Medicine H-58 (2010).

[20]Mag. Judge Rec. at 7-8.

[21]San Antonio EMS Records For Wallace Davis at 14, January 1, 2010 (Def. Ramos's Mot. For Sum. Judg., Ex. B).

9

judgment. In light of Davis's Affidavit, this Court does not agree.

The objective reasonableness of an officer's use of force is determined by considering a particular case's facts and circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to officer or third party safety, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005). The reasonableness of a particular use of force is judged from the viewpoint of a "reasonable officer on the scene" rather than perfect hindsight, and a court should note that officers must often make split-second judgments in tense, uncertain, and dynamic circumstances. *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008). This Court must therefore balance the amount of force used against its necessity in the particular case circumstances. *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004).

Ramos's expert Ortiz opined that a reasonable officer could have probable cause to believe a traffic violation was occurring upon viewing Davis walking unsteadily in the street with a sidewalk nearby, or that Davis's sudden reach into his pocket could indicate a weapon.[22] Moreover, Ortiz opined that a reasonable officer could have probable cause to arrest based on Davis's impairment, his close proximity to the officers, and the late hour.[23] Last, Ortiz concluded that Ramos's use of physical force, arm pins, and head locks was necessary given Davis's illegal resistance, and that Davis's injuries resulted solely from resisting.[24] Ramos also cited Davis's original admission that

---

[22]Declaration of Albert Ortiz at 3, January 14, 2011 (Def. Ramos's Desig. Of Ex. Wit., Ex. A).

[23]*Id.*

[24]*Id.*

Ramos's seizure of Davis involved an assumption that Davis was armed. The Magistrate Judge noted the lack of contrary evidence and found Ramos and Hoyos's actions reasonable under the *Graham* factors.[25] Despite the minor severity of the alleged crime (public intoxication), the Magistrate Judge held that Davis's argumentative nature supported a conclusion that he posed a potential threat by reaching into his pocket, and that his active resistance justified the need for physical force.[26] The Magistrate Judge consequently concluded that the evidence proved Davis's behavior escalated the situation and caused his resulting injuries, and thus that Ramos's force was not objectively excessive.[27]

Davis's Affidavit set forth particular and conflicting facts regarding the manner of Ramos's approach and request for his identification, the nature of Davis's response, and whether he admitted not having his card or refused to cooperate, the speed with which Ramos's grip turned into a bear hug and then an alleged "piledriver" (i.e. whether Davis or Ramos was the chief cause of Davis's injury), and the nature of Davis's resistance (whether Davis actively or passively resisted the officers). The Affidavit also reiterated Davis's eye troubles and cited a doctor's diagnosis that Davis's injuries were caused by "assault."

Summary judgment requires this Court to reasonably construe all evidence in favor of the nonmovant. Viewing all inferences and evidence in favor of Davis, the Court must evaluate the objective reasonableness of Ramos's force when 1) Davis was stopped while walking on the sidewalk; 2) Davis was demanded to present identification by Ramos in a "harassing" manner; 3)

---

[25]Mag. Judge Rec. at 9-10.

[26]*Id.*

[27]*Id.*

11

Davis did not get loud with the officers or refuse to cooperate; 4) Davis was complying with Ramos's command for identification by reaching into his back pocket; 5) Davis grabbed onto the car fender to secure himself from harm; and 6) Ramos instantly converted his grip into a bear hug and then slammed Davis into the pavement.

Assuming the facts in the light most favorable to the Plaintiff, the traffic violation was minor. Moreover, Davis's hand was in his pocket allegedly in compliance with Ramos's instruction to provide identification and, while Davis resisted, he did so only after being seized. Viewing Ramos's alleged behavior in these circumstances–an officer's unilateral seizure of a suspect for complying with his request, resulting in facial bruises, lacerations, and internal and sight damage–genuine issues of material fact do exist as to whether Ramos unilaterally caused Davis's injury and used objectively unreasonable force. Ramos's qualified immunity defense is thus insufficient, because 1) at the time of arrest Davis had a clearly established right to be free from excessive force and 2) Davis's version of events alleges a clear violation of that right. *See Deville*, 567 F.3d at 169. This Court therefore DENIES Ramos's motion for summary judgment.

**B. Municipal Liability**

Davis's initial complaint alleged that the City is liable for allegedly failing to investigate his claim of abuse by Officer Ramos. However, Davis's Affidavit makes no arguments regarding the City and cites no evidence in relation to the claim. The City's summary judgment motion argues that no official policy condones excessive force, and that Davis's allegations do not establish municipal liability. As evidence, the City cites the Affidavit of Captain Gorhum regarding SAPD policies and its investigation of Ramos, as well as SAPD procedural manuals covering use of force, warrantless

arrests, rules, weapons, and prisoners.[28] The Magistrate Judge found the City's argument persuasive and recommended granting summary judgment. This Court agrees.

Municipalities are liable in § 1983 claims not under *respondeat superior*, but only if injury is caused by execution of a government policy or custom by its lawmakers or their official representatives. *Monell*, 436 U.S. at 691, 694; *Deville*, 567 F.3d at 170. An official policy may be an officially adopted and promulgated policy statement, regulation, or decision by lawmakers or their representatives; an unofficial yet persistent and widespread city employee practice "so common and well settled" that it constitutes a custom representing city policy; or a final decision maker's adopted course of action for a particular situation. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380-81 (5th Cir. 2010).

Municipal liability under § 1983 can extend to a city's failures to train or discipline police officers where the failure amounts to deliberate indifference to citizens' constitutional rights. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (failure to train); *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001) (failure to discipline). Municipal liability under § 1983 has three elements: 1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose "moving force" is the policy or custom. *Id.* at 578. A policymaker must have actual or constructive knowledge of the alleged policy motivating the alleged violation. *Id.* at 579. A direct causal link between municipal action and constitutional deprivation must also exist. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).

In particular, the City argues that Davis's claim against the city is conclusory and involves only a single incident of alleged police misconduct. As a result, the City argues that Davis's claim

---

[28]Def. City's Mot. For Sum. Judg. at 3.

fails to meet his nonmovant burden to prove that a genuine issue of material fact exists as to the presence of a city custom or practice of excessive use of force which motivated Ramos's alleged violation.[29] The Magistrate Judge's Recommendation held that "Davis has identified no policy or custom" of excessive force or even cursory investigation "which would impose liability on the City."[30] The Magistrate Judge also cited Police Captain Gorhum's Affidavit, which stated that SAPD conducts internal investigations of officers should a sworn complaint be filed up to 180 days after an incident, but that no investigation of Ramos occurred because Davis made no complaint within the deadline.[31]

While adopting all of the Magistrate Judge's above observations, this Court also notes that SAPD Manual Procedure 501 ("use of force") provides that "officers must be aware that unnecessary or excessive force violates Federal Statutes, the Texas Penal Code and Departmental Policy," and specifies that supervisory officers must review use of force reports for reasonableness and compliance with departmental policies.[32] In light of the total absence of allegations regarding any City policy or custom in Davis's Affidavit, this Court adopts the Magistrate Judge's recommendation and GRANTS summary judgment to the City.

## Conclusion

After careful consideration of the submissions of the parties, the evidence, and the applicable

---

[29]Def. City's Mot. For Sum. Judg. at 6-7.

[30]Mag. Judge Rec. at 5-6.

[31]Affidavit of Captain Michael Gorhum at 2-3, April 15, 2011 (Def. City's Mot. For Sum Judg., Ex. 35-1).

[32]SAPD General Manual Procedure 501-Use of Force at 1, 7, October 1, 2009 (Def. City's Mot. For Sum. Judg., Ex. 35-2).

law, the Court GRANTS Defendant City's motion for summary judgment (Docket No. 35) and DENIES Defendant Ramos's motion for summary judgment (Docket No. 39).

It is so ORDERED.

SIGNED this 12th day of August, 2011.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE